STATE OF NORTH CAROLINA v. JOHN PATRICK McADAMS

No. 8012SC964

(Filed 3 March 1981)

1. **Homicide § 21.9– shooting of wife – sufficiency of evidence of involuntary manslaughter**

There was sufficient evidence of defendant's wantonness, recklessness, or other misconduct amounting to culpable negligence to support a verdict of involuntary manslaughter where such evidence tended to show that defendant sat on a couch in his living room while he oiled and cleaned his gun; his wife was seated to his right on the same couch; after cleaning the gun, defendant loaded it with 14 rounds of ammunition and pointed it out the front of the house, which was to his right; he noted that the bolt was stuck in the rear position, and he attempted to get the bolt to go forward by slamming it; the gun fired; defendant looked to see if the bullet had gone out the front of the house and observed that his wife had been shot; and defendant then called the operator to ask for police assistance and an ambulance, but he was so excited that the operator could not understand him.

State v. McAdams

**2. Criminal Law § 38– death by shooting – earlier pointing of gun – evidence inadmissible**

In a prosecution of defendant for the murder of his wife where defendant contended that he accidentally shot her, the trial court erred in permitting defendant's neighbor to testify that on the evening before the shooting she had told the defendant not to point the gun at her while he was cleaning it, since defendant's acts of negligence toward a party other than deceased on the day before the crime charged was inadmissible to show a culpably negligent disposition and did not show intent, design, guilty knowledge or exhibit a chain of circumstances throwing light on the alleged crime, and evidence of the two incidents of pointing a gun may have had a cumulative effect in the minds of the jurors rather than being viewed as evidence of two separate, independent incidents.

APPEAL by defendant from *Lee, Judge*. Judgment entered 16 May 1980 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 12 February 1981.

Defendant was indicted for the murder in the second degree of his wife. At the conclusion of the State's evidence and at the close of all the evidence, defendant made a motion for dismissal of the charge and all lesser included offenses. The motions were denied, and the trial judge charged the jury that they could find defendant guilty of murder in the second degree, guilty of involuntary manslaughter, or not guilty. The jury found defendant guilty of involuntary manslaughter. Defendant was given an active sentence with a recommendation for work release, and he now appeals.

*Attorney General Edmisten, by Associate Attorney General Sarah C. Young, for the State.*

*Assistant Public Defender John G. Britt Jr. for defendant appellant.*

HILL, Judge.

[1] Defendant brings forward two assignments of error. We consider them in reverse order. Did the trial judge commit reversible error when he denied defendant's motion to dismiss at the close of all the evidence and submitted a charge of involuntary manslaughter to the jury? We hold that he did not.

Upon a motion for nonsuit or a motion to dismiss in a criminal action, all of the evidence favorable to the State, whether competent or incompetent, must be considered. The evidence

must be deemed true and considered in the light most favorable to the State; discrepancies and contradictions therein are diregarded; and the State is entitled to every inference of fact which may be reasonably deduced therefrom. *State v. Witherspoon*, 293 N.C. 321, 326, 237 S.E. 2d 822 (1977).

Viewed in light of the standards set forth above, the evidence shows that on the evening of the fatal shooting, defendant fired his recently purchased .22 caliber rifle until its loading chamber was empty. Thereafter, defendant went into his house and sat on the couch in the living room, where he proceeded to oil and clean the gun. His wife was seated in a reclining position to defendant's right, on the same couch, watching T.V. After cleaning the gun, defendant loaded the rifle with 14 rounds of ammunition and pointed it out the front of the house, which was to defendant's right. He noted the bolt was stuck in the rear position, and he attempted to get the bolt to go forward by slamming it. The gun fired. Defendant looked to see if the bullet had gone out the front of the house and observed that his wife had been shot. Defendant testified that he did not remember whether the safety catch was on or whether his finger had been on the trigger.

Further evidence showed that defendant called the operator to ask for police assistance and an ambulance, but that the defendant was so excited the operator could not understand him. The State introduced an expert witness who testified that the gun could be "fooled" into going off without pulling the trigger, but only by going through some very special steps. The expert testified that he shot the gun several times and it never malfunctioned.

We hold that the trial judge did not err when he submitted the charge of involuntary manslaughter. Involuntary manslaughter is the unintentional killing of a human being, without either express or implied malice, by some unlawful act not amounting to a felony or naturally dangerous to human life, *or by an act or omission constituting culpable negligence. See State v. Foust*, 258 N.C. 453, 459, 128 S.E. 2d 889 (1963); 4 Strong's N.C. Index 3d, Homicide § 6.1, p. 537. Culpable negligence is more than the actionable negligence often considered in tort law, and is such recklessness or carelessness proximately resulting in injury or death as imports a thoughtless or needless indiffer-

State v. McAdams

ence to the rights and safety of others. *State v. Everhart*, 291 N.C. 700, 231 S.E. 2d 604 (1977); *State v. Wilkerson*, 295 N.C. 559, 580, 247 S.E. 2d 905 (1978).

Applying these principles to the case *sub judice*, we conclude there is sufficient evidence of wantonness, recklessness, or other misconduct amounting to culpable negligence to support a verdict of involuntary manslaughter.

[2] Nevertheless, the defendant is entitled to a new trial. Defendant correctly argues in his second assignment of error that the trial judge erred by permitting defendant's neighbor, Marilyn Rodriguez, to testify that on the previous evening she had told defendant not to point the gun at her while he was cleaning it. At trial, defendant objected to the introduction of this testimony as being irrelevant.

The State contends the testimony is admissible. The commission of a certain act is never admissible to show the disposition of defendant to commit a similar act at some other time. Evidence is admissible, however, if offered for another purpose, that is to show *quo animo*, intent, design, guilty knowledge or scienter, or to make out the *res gestae*, or to exhibit a chain of circumstances when incidents are so connected as to throw light on the alleged crime. *State v. Lowery*, 286 N.C. 698, 705, 213 S.E. 2d 255 (1975), *modified as to death penalty* 428 U.S. 902 (1976).

The issue in this case is whether defendant acted in a criminally negligent manner on 7 September 1979. Evidence of his acts of negligence toward a different party on 6 September 1979 is inadmissible to show a culpably negligent disposition and does not fit within the exceptions listed above. Evidence of the two incidents may have had a cumulative effect in the minds of the jurors rather than being viewed as evidence of two separate, independent incidents. For that reason, admission of the evidence was prejudicial. Defendant is awarded a

New Trial.

Judges HEDRICK and WEBB concur.